COSTA & SANTINI, SUCCRS., INC., Plaintiff and Appellee, *v.*
ANTONIO SULIVERES, Defendant and Appellant.

No. 5647.   Argued May 5, 1932.—Decided March 17, 1933.

*A. Suliveres* for appellant.   *R. Buscaglia* for appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the
Court.

Costa & Santini, Succrs., Inc., brought an action of debt
against Antonio Suliveres to recover $2,244.75.   It was alleged
that sometime in May, 1920, the defendant bought on credit
from Costa & Santini, a shipment of fertilizer for use on his
cane plantations, and in payment thereof he gave a promissory
note, which is copied in the complaint, for $1,486.65, due and
payable on May 27, 1921, with interest at 9 per cent per annum
after maturity;  that the interest up to the date on which the

complaint was filed—February 18, 1927—amounted to $758.09; and that Costa & Santini, as well as the plaintiffs who are their assignees and liquidators, have made efforts to recover from the defendant who has made promises of payment which he has not fulfilled, either in whole or in part.

The complaint was filed on February 21, 1927. On May 15, 1929, the plaintiff appeared before the court and alleged that when the suit was filed on February 18, 1927, the corresponding summons was issued on the same date and directed to the defendant; that according to its information and belief the summons was served personally on the defendant who failed to appear, but upon examination of the record in order to request the entry of default, it was found that said summons had not been returned, and that the plaintiff believed it to be lost. The court was asked to issue a "duplicate of said summons to be served on the defendant."

On the grounds alleged in the motion, that is, "it appearing that a summons to the defendant was issued in this case on the date of the filing of the complaint," the court ordered that "the defendant be summoned again to answer the allegations of the complaint." The order was issued on June 28, 1929.

Then follows in the transcript the summons issued and the return of the marshal of the District Court of Arecibo wherein he states that he received the summons on July 22, 1929, and that he notified the defendant personally with a copy thereof, together with a copy of the complaint on July 23, 1929.

At this stage of the proceedings, the defendant moved, on August 10, 1929, that the summons and its service be declared null and void, and that the complaint be dismissed with costs to the plaintiff.

As a ground for his motion he alleged that the summons, through the inexcusable negligence of the plaintiff, was not issued until two years and four months after the filing of the complaint, when it could no longer be issued in accordance

with section 88 of the Code of Civil Procedure, the holding in *Estate of Chavier* v. *Estate of Giráldez,* 15 P.R.R. 145, and the jurisprudence of California cited in that case.

The court heard both parties and on October 15, 1929, rendered the following order:

"This case deals with a motion filed by the defendant for the quashing of the summons and the dismissal of the complaint because more than a year has elapsed since the filing of said complaint without the defendant having been served with summons. The defendant relies for his motion on the provisions of section 88 of the Code of Civil Procedure, and in support of his theory he cites the jurisprudence of the Supreme Court in the case of *Estate of Chavier* v. *Estate of Giráldez,* 15 P.R.R. 145. Apparently, the defendant is right. From the record of the case, however, it appears that on June 28, 1929, this same court issued an order in which it said that 'it appearing that in this case a summons directed to the defendant was issued on the date of the filing of the complaint, and that said summons has been lost, this court orders that the defendant be summoned anew to answer the allegations of the complaint.' Undoubtedly the court, when it issued this order, had in mind section 90 of the Code of Civil Procedure, and if such is the case, it is not a question of an original summons, but of a copy of the one which was originally issued when the complaint was filed and which was lost. We do not believe that the law and jurisprudence are applicable, and therefore the motion of the defendant is denied and a term of ten days, counted from the date of the notification of this order, is granted to him within which to appear and plead to the complaint. Let the parties be notified."

On December 2, 1929, the plaintiff filed an amended complaint which is essentially the same as the original one, except that in addition to stating generally that efforts for collection had been made, it specified: "That the efforts toward collection and the promises to pay mentioned in the preceding averment, and made by the plaintiff prior to the filing of the complaint, refer specifically to the dates of July and August, 1923, and to the months of December, 1924, and January, 1925."

Notice of the amended complaint was served by mail on the defendant, and on December 10, 1929, he filed the following demurrer:

"The defendant demurs to the complaint filed herein on the ground that the same does not allege facts sufficient to constitute a cause of action.

"WHEREFORE, the defendant prays that, in due course of law, the complaint be dismissed, with costs to the plaintiff."

Some days later the demurrer was dismissed by the court, and on February 26, 1930, the defendant answered substantially as follows:

He admitted the allegations relative to the identity of the parties, the contract for the fertilizer, and the execution of the promissory note, and set up as a special defense that on July 19, 1923, the plaintiff requested that the defendant put in writing the verbal proposal that he had made for the payment of the obligation copied in the complaint; that the defendant did so on August 2, 1923, offering to pay at the rate of $100 annually without interest, and offering his services as a lawyer in Arecibo to the plaintiff, his fees as such to be applied to the payment of his debt; that on August 3, 1923, the plaintiff wrote to him accepting such offer; that he answered that if it were possible, he would make the first $100–payment that year or the following year, 1924; that in December 1924, he received a letter from the plaintiff's attorneys informing him that they were holding the promissory note for the purpose of collecting the same through legal action, which was contrary to the agreement, as the term for the payment of the first installment of $100 had not yet expired.

He admitted the efforts toward collection and the promises to pay of July and August, 1923, but he denied that any such efforts or promises were made in December, 1924, or in January, 1925, and as a special defense, he alleged that since August, 1923, no demand for payment has been made upon him, nor has he promised to pay, having stated, in answer to

the letter sent by the attorneys of the plaintiff, that it was an error to demand payment of the note, as the obligation had been novated by virtue of the agreement for its payment at the rate of $100 annually, without interest.

As further special defenses, he alleged that the summons of June 28, 1929, was null and void because it was issued two years and four months after the filing of the complaint, and that the action brought by the plaintiff for the collection of the note was barred in accordance with sections 2, 532, and 950 of the Code of Commerce, inasmuch as a commercial obligation was involved and more than three years had elapsed from August 3, 1923, the date on which the defendant acknowledged the obligation which was novated, to February, 1927, when the complaint was filed.

The issues having thus been joined, the case was set for trial on July 2, 1930. The defendant asked for a continuance because the summons had not been served until May 30, and it was impossible for him to prepare his evidence in so short a time, as he had to summon "several witnesses domiciled in San Juan whose residence we must ascertain." The court denied the motion, as it did not comply with the requirements of section 202 of the Code of Civil Procedure, and the trial was held in the absence of the defendant.

The evidence of the plaintiff consisted of the testimony of José A. Negrón and Héctor Cestero. The former has been an employee of the plaintiff since 1924. Costa & Santini was a mercantile partnership composed of Nicolás Santini and Antonio Costa and engaged in the manufacture and sale of chemical fertilizers. The promissory note in question was endorsed in favor of the plaintiff who took charge of the assets and liabilities of Costa & Santini. The note is in the possession of the plaintiff and neither the principal nor the interest has been paid. The witness knows that efforts toward collection were made in 1924. The defendant promised to pay $100 monthly, but did not fulfill his promise and thereupon the complaint was filed. Cestero is a salesman

for the plaintiff and takes care of collections. He is required to make a written report every time that he calls on a debtor. He saw the defendant on May 31, 1929. "He admitted that he owed us the account, but that he had been unable to pay it because of his financial condition, and he told me that he had offered to the firm to apply 75 per cent of his fees to the payment of his debt."

On August 18, 1930, the district court rendered judgment for the plaintiff and ordered the defendant to pay the sum of $1,486.75, interest, and costs.

The defendant appealed to this Court. In his brief he assigns seven errors. The first three deal with the nullity of the summons, and the fourth with the denial of a continuance of the trial. By the fifth it is contended that the court erred in finding that the note was in the possession of the plaintiff; and by the sixth, that it had erred in not declaring the action barred. The seventh assignment is that the court erred generally in rendering a judgment in favor of the plaintiff.

As against the first three errors assigned, the appellee maintains that the appellant waived any objection to the summons by appearing after the ruling thereon and by demurring to the complaint.

The question raised is very interesting. The jurisprudence which we consider as applicable is summarized in 4 C.J. 1365, thus:

"In some jurisdictions it is held that, where a defendant appears specially to object to the jurisdiction, and his objection is overruled, he must elect either to stand on his objection or to go into the merits, and, if he goes into the merits of the cause, the objection is thereby waived. This rule, however, is subject to qualification, where the appearance is not voluntary, or where there is a stipulation allowing defendant to plead. But in many other jurisdictions, and by what seems the sounder reasoning, it is held that a defendant does not lose the benefit of his attack on the jurisdiction by thereafter answering and pleading to the merits, provided he preserves

his objection, secures a ruling thereon, and has the ruling embodied in an exception. But even where this rule prevails, if a defendant goes further than he is necessarily required to do in order to contest the action on its merits and makes himself an actor in the proceeding by filing a counterclaim or cross-petition and by asking for affirmative relief, he thereby waives the question of personal jurisdiction.''

The first rule is supported by decisions from Alabama, California, Colorado, District of Columbia, Florida, Idaho, Illinois, Iowa, Michigan, Missouri, Nebraska, North Dakota, Oregon, South Carolina, and Wisconsin. We will cite one from California, *In re Clark*, 125 Cal. 388, 392, and from it the following paragraph of the opinion of the court delivered by Mr. Justice Temple:

''As a rule one cannot avail himself of the advantage of being a party and escape the responsibilities. Some early cases in this State (*Deidesheimer* v. *Brown*, 8 Cal. 340, and *Lyman* v. *Milton*, 44 Cal. 631) seem to hold that a defendant having first objected to the process or service by which he was brought in, may then, if his objections are overruled, answer to the merits, and on appeal from the judgment still avail himself of his objections to the jurisdiction of the court over him. This rule seems unjust and illogical, and I think does not prevail elsewhere. It gives the defendant, whose objections to the jurisdiction of the court have been erroneously overruled, an opportunity to go to trial, and if the judgment is favorable to abide by it, while if it is unfavorable he can procure a reversal. The plaintiff would have no such advantage. And what would be the condition of such a defendant after reversal? If the reversal means that he is not yet in the case, he may move to dismiss under section 581. If it merely gives him a new trial, the procedure seems farcical.''

The second rule is upheld by decisions of the Supreme Court of the United States and of some federal and state courts in Arizona, Indiana, Kansas, Kentucky, Massachusetts, Minnesota, Montana, New York, North Carolina, Ohio, Oklahoma, Rhode Island, South Dakota, Washington and West Virginia. We will cite two excerpts from the case of

*Southern Pacific Co.* v. *Denton,* 146 U. S. 202, 206, where the opinion was delivered by Mr. Justice Gray:

"It may be assumed that the exemption from being sued in any other district might be waived by the corporation, by appearing generally, or by answering to the merits of the action, without first objecting to the jurisdiction. *St. Louis & San Francisco Railway* v. *McBride,* 141 U. S. 127; *Texas & Pacific Railway* v. *Cox,* 145 U. S. 593.

"But in the present case there was no such waiver. The want of jurisdiction, being apparent on the face of the petition, might be taken advantage of by demurrer, and no plea in abatement was necessary. *Coal Co.* v. *Blatchford,* 11 Wall. 172. The defendant did file a demurrer, for the special and single purpose of objecting to the jurisdiction; and it was only after that demurrer had been overruled, and the defendant had excepted to the overruling thereof, that an answer to the merits was filed. Neither the special appearance for the purpose of objecting to the jurisdiction, nor the answer to the merits after that objection had been overruled, was a waiver of the objection. The case is within the principle of *Harkness* v. *Hyde,* in which Mr. Justice Field, speaking for this court, said: 'Illegality in a proceeding by which jurisdiction is to be obtained is in no case waived by the appearance of the defendant for the purpose of calling the attention of the court to such irregularity; nor is the objection waived when being urged it is overruled, and the defendant is thereby compelled to answer. He is not considered as abandoning his objection, because he does not submit to further proceedings without contestation. It is only where he pleads to the merits in the first instance, without insisting upon the illegality, that the objection is deemed to be waived.' 98 U. S. 476, 479."

We are aware of the force of the reasoning in the California decision, but we feel obliged to follow the course laid out by the jurisprudence of the Supreme Court of the United States. Nevertheless, we are of the opinion that, according to the facts of the instant case, the defendant's objection should be considered as waived, because the defendant went into the merits of the case without insisting upon the illegality of the summons. We know that on December 2, 1929, more than two months after the denial of the defendant's motion to quash the summons, the plaintiff filed an

amended complaint of which the defendant was notified by mail; and we also know that the latter, on December 10, 1929, filed the demurrer already transcribed by us, praying that the court, considering the facts as alleged in the complaint, that is, taking the plaintiff's contention on its own merits, hold that there was no cause of action and impose the costs on the plaintiff. No reservation was made. The merits of the litigation were gone into, openly and frankly. On the 26th of the following February, or more than two months later, the defendant, his demurrer having been overruled, answered and again raised the question of the nullity of the summons as one of his defenses. It was then too late. By his conduct he had submitted himself to the jurisdiction of the court, and he could not repudiate his own acts.

But even if such were not the case, we believe that there would still be sufficient grounds for holding that the decision of the district court was not erroneous in permitting the serving of the summons on the defendant after the expiration of one year from the date of the filing of the complaint.

The applicable law is contained in section 88 of the Code of Civil Procedure, which provides:

"Section 88. The secretary must endorse on the complaint the day, month and year that it is filed, and at any time within one year thereafter, the plaintiff may have a summons issued; and if the action be brought against two or more defendants, who reside in different districts, may have a summons issued for each of such districts. But at any time within a year after the complaint is filed, the defendant may, in writing, or by appearing and answering or demurring, waive the issuing of summons; or, if the action be brought upon a joint contract of two or more defendants, and one of them has appeared within the year, the other or others may be served or appear after the year, at any time before trial."

Summing up the jurisprudence on this question, Corpus Juris says:

". . . It is not required that the complaint shall be filed and the summons issued at the same time; and in a jurisdiction wherein the

statutes place no limitation upon the time of issuing a summons, it may issue at any time; but in jurisdictions wherein the codes or statutes provide for the issuance of a summons within a limited period of time after the filing of the complaint, it must be issued within the time limited, unless the code or statutory provision is directory or an order of court for the issuance of process is procured; and it is within the discretion of the court to allow or refuse the issuance of summons after a long delay or the expiration of the statutory period." Id., vol. 50, p. 451.

In support of its text, that in the jurisdictions wherein the statute sets a limitation upon the time of issuing a summons, the latter must be issued within the time limited, Corpus Juris cites the jurisprudence of California, and as a basis for the statement that "unless the code or statutory provision is directory," it mentions the jurisprudence of Puerto Rico.

The jurisprudence of California is summarized in 21 Cal. Jur. 492, as follows:

"Effect of Delay.—As is seen in other articles in this work, a mandatory duty is imposed upon the trial court to dismiss an action where the summons has not been issued within one year, or served and returned within three years. The only exceptions to this rule are in cases where the defendant has made a voluntary appearance within three years, or in cases—other than certain actions relating to real or personal property—in which the defendant is absent from the state or has secreted himself to avoid service. Although there is a compulsory duty on the part of the court to dismiss the action when there has been delay for the statutory period, yet the court has a discretionary power under the statute to dismiss for unreasonable delay even though such delay is shorter than that named in the statute. The code provision as to dismissal does not apply, however, to the issuance, service and return of summons upon a cross-complaint."

The rule is rigid, and it is believed to be so because in California there not only exists a provision similar to section 88 of our Code of Civil Procedure, but its Code of Civil Procedure also contains section 581 *a*, which in so far as it is pertinent here textually says:

"No action heretofore or hereafter commenced shall be further prosecuted, and no further proceedings shall be had therein, and all actions heretofore or hereafter commenced must be dismissed by the court in which the same shall have been commenced, on its own motion, or on motion of any party interested therein, whether named in the complaint as a party or not, unless summons shall have issued within one year, and all such actions must be in like manner dismissed, unless the summons shall be served and return thereon made within three years after the commencement of said action." Fairall's Code of Civil Procedure, Part One, Pag. 630, 581 a.

The jurisprudence of Puerto Rico on which the text of Corpus Juris is based was established in the case of *Estate of Chavier* v. *Estate of Giráldez,* 15 P.R.R. 145. The opinion of the Court was delivered by Mr. Justice MacLeary.

There, after a review of the jurisprudence of California, the full text of section 88 of our Code of Civil Procedure is copied in the opinion, and then it is said:

"From the use of the word 'may' instead of 'must' in speaking of the issuance of the summons it would seem that it is not mandatory on the plaintiff to cause the writ to issue but directory merely. (See *Medbury* v. *Swan,* 46 N. Y., 200; *People* v. *Syracuse,* 128 N. Y., 632; 29 N. E. Rep., 146.) And besides, no penalty of any kind is affixed to a disregard of this statute which leaves its enforcement largely in the discretion of the court, under the provisions of other statutes."

Then follows a study of the jurisprudence and the facts of the case and the attendant circumstances thereof, and almost at the end of the opinion it is again said:

"The rights secured by section 88 of the Code of Civil Procedure, in favor of each party according to its terms, are *substantial* rights and must be protected by the courts when properly urged for consideration. But that section does not require the summons to issue within one year; the word 'may' not being equal to 'must' in that section."

The facts in the *Estate of Chavier* case are not the same as those in the case at bar, but the rule that section 88 of the Code of Civil Procedure is directory and not mandatory

was so clearly and firmly established that it may be, and in our opinion it should be, applied in the decision of the instant case.

It is true that in examining the grounds that the district court had for acting as it did, we find that it had doubted its powers under section 88, *supra,* and relied upon another section, namely, section 90, for its authority to order the summons; but it is also true that its action showed that it wished to permit the action to continue.

Let us analyze the question, however, in the light of section 90, *supra,* which says:

"Section 90. If the summons is returned without being served on any or all of the defendants, the secretary, upon the demand of the plaintiff, may issue an alias summons, in the same form as the original."

It is equivalent to section 408 of the Code of Civil Procedure of California, to which was added a proviso prohibiting the issuance of a second summons after the expiration of one year from the date of the filing of the complaint.

It is clear that the issuance of an alias summons is predicated on the return of the first unexecuted. Here it was alleged by the plaintiff that the summons had been issued upon the filing of the complaint, and that according to its information and belief the summons was served personally on the defendant, the original document having later disappeared, for which reason the issuance of a duplicate was requested. The defendant alleged that he was never notified and the court decided that the first summons had been issued.

It does not appear that the plaintiff presented evidence. The defendant-appellant says in his brief that such evidence was not presented, and he contends that under these circumstances the conclusion of the court has no basis. The contention is really strong, but it must not be forgotten that an entry of the issuance of the first summons might appear from the clerk's books. The decisions of the courts are presumed to be just unless the contrary is clearly shown.

Nor should the fact be overlooked, in the decision of this case, that no prejudice was caused to the defendant by permitting that he be summoned again, or for the first time, more than two years after the filing of the complaint. The latter was never dismissed. The plaintiff could have filed it again and obtained a summons within the year. In view of the evidence introduced by the plaintiff regarding its efforts to effect collection, the determination of the defense of prescription set up would be the same, whether the complaint was filed on the date shown or two years later.

Therefore, deciding said question on its merits, it is concluded that the court did not commit the first three errors assigned.

It did not commit the remaining errors, either. The existence of the promissory note signed by the defendant acknowledging his debt, its transfer to the plaintiff, and the maturity of the obligation in 1921, the failure to pay, the efforts for collection, the terms for payment that were granted to the defendant, and his failure to pay in any way, were all proved.

There was no novation. Aware that the defendant did not pay, the plaintiff agreed to accept what the defendant himself offered, annual payments of $100, which payments, according to the defendant himself, were to begin in 1923 or 1924. The debt was always the same. The form of payment was changed, and as the new terms, favorable to the defendant, were not fulfilled by him, the obligation remained in full force as originally contracted.

When, in December 1924, the plaintiff's counsel attempted to collect from the defendant, the latter did not deny the obligation. He said that there was a new agreement for the payment.

The action had not prescribed when the complaint was filed in 1927, nor would it have been barred had the complaint been filed two years later, because the evidence showed that on May 31, 1929, one of the plaintiff's employees had a

conference with the defendant and the latter acknowledged his debt.

As to the refusal to grant a continuance, not only has it not been shown that the court abused its discretion in acting as it did, but if the defendant's own motion is examined in the light of section 202 of the Code of Civil Procedure, it will be found that it fails to comply with the requirements of the law. It does not show the materiality of the evidence expected to be obtained, nor that due diligence has been used to procure it. On the contrary, the motion itself shows a lack of diligence, as it is inconceivable that at that stage of the proceedings the defendant should not already have ascertained the residence of his witnesses who lived in San Juan.

This is a case that reveals all of the subtlety that may be employed by a person who seeks to avoid the payment of a debt whose legitimacy of origin he cannot and does not deny at any time. Absolute justice would decide the case on a mere statement of the evidence, and without further reasoning, by directing payment. Relative justice which is regulated by the law and the precedents, and which is within our power to administer, has required a careful study of all the questions raised. Fortunately, the decision to be reached is the same.

The judgment appealed from must be affirmed.